# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

COUNCIL OF UNIT OWNERS OF
THE 100 HARBORVIEW DRIVE
CONDOMINIUM,

    Cross-Appellant,

v.     Civil Case No.: SAG-18-03542

PAUL C. CLARK, SR., *et al.*,

    Cross-Appellees.

## MEMORANDUM OPINION

This appeal results from the reorganization of the Council of Unit Owners of The 100 Harborview Drive Condominium ("Appellant" or "Reorganized Debtor") in Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court").[1] Reorganized Debtor appeals the Preliminary Damages Order, ECF 6-35, and Final Damages Order of the Bankruptcy Court, ECF 6-49. Judge Michelle Harner ("Judge Harner") of the Bankruptcy Court awarded certain damages to Paul C. Clark, Sr., Rebecca Delorme, and Paul C. Clark, Jr. ("Appellees" or "Creditors") for their claims during the Chapter 11 reorganization process. I have reviewed Appellant's brief, ECF 17, Appellees' brief, ECF 19, and Appellant's reply, ECF 21. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Bankruptcy Court's decision is **AFFIRMED**.

---

[1] For purposes of this opinion, and because the Creditors' appeal has been dismissed, ECF 24, Cross-Appellees (Dr. Clark, *et al*) are referred to as "Appellees" and Cross-Appellant (Harborview Drive Condominium) is referred to as "Appellant."

**I.     Factual Background**

This appeal "is the latest-filed action in a quintet of cases, and numerous administrative actions relating to a series of disputes between [Appellees], who purchased a penthouse condominium in the Harborview Towers, and [Appellant], who manage[s] or managed Harborview." *See Clark v. 100 Harborview Drive Council of Unit Owners*, 2016 WL 1159198 (D. Md. Mar. 23, 2016). A detailed factual background is found in this Court's Memorandum Opinion dismissing the Creditors' appeal as equitably moot, and is incorporated by reference herein. *See* Memorandum Opinion, ECF 22. This particular case stems from claims filed by Appellees, as part of Appellant's Chapter 11 reorganization, for damages to their condominium ("Unit PH4A") caused primarily by water leakage. The Bankruptcy Court conducted a trial in February, 2018, during which it observed fact and expert witnesses over the course of four days. ECF 6-35 at 6. For instance, Appellees' structural engineer (Otto Guedelhoefer), and Appellant's building engineer (Christopher Coleman) each testified about leakage in Unit PH4A. *See id.* at 7. Additionally, Loren Reese provided expert testimony about the rental market at the Inner Harbor, which Appellees leveraged in support of their loss of use claim. *Id.* at 28. Following the trial, the Bankruptcy Court issued its Preliminary Order on April 10, 2018. *See* Preliminary Order Regarding Creditors' Damages Claim, ECF 6-35.

In its final damages award, the Court awarded Appellees $731,000 in "set damages" and $19,552 in "ongoing damages," on October 16, 2018, for a total aggregate amount of $750,552. Final Order Regarding Creditors' Damages Claim, ECF 6-49 at 12–13. This aggregate amount included $6,000 per month in "loss of use" damages, and $299,000 for repair of the unit. ECF 6-

35 at 27. Loss of use damages were awarded for 72 months, *i.e.*, February 23, 2012 until February 23, 2018, for a total of $432,000.[2]  *Id.* at 26.

Relevant to this appeal, the Court limited the loss of use damages to this timeframe, because Appellees were precluded from seeking damages for conduct that took place prior to February 23, 2012. *Id.* at 11. February 23, 2012 was the appropriate starting date, because the Baltimore City Circuit Court ("City Court") had entered summary judgment in favor of Appellant in a related case on that date.[3] *See* Memorandum Opinion, ECF 5-43 at 16. Because of the City Court's decision, the Bankruptcy Court found that Appellees' claims predating February 23, 2012, were precluded under the doctrine of res judicata. ECF 6-35 at 4 ("[T]he Creditors' breach of fiduciary duty and breach of contract claims, and any related damages, based on facts, allegations, or conduct arising on or prior to February 23, 2012, are barred under the doctrine of res judicata"). Importantly, however, the Bankruptcy Court found "that the Creditors adequately identified leaks and damage to Unit PH4A occurring *after* February 23, 2012." *Id.* at 12 (emphasis added). Appellant filed its notice of cross-appeal on November 12, 2018. ECF 1-14.

## II. Cross-Appeal

### A. Legal Standard

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158. On appeal from the bankruptcy court, the district court acts as an appellate court, and reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de*

---

[2] This amount does not include the $19,552 added as ongoing damages in the Final Order. The Court awarded damages through the date of substantial remediation on May 31, 2018. ECF 6-49 at 13.

[3] The City Court granted summary judgment to Appellant in *Clark v. Zalco Realty, Inc., et al.*, 24-C-10-007236 (Circ. Ct. Balt. City), which was described in *100 Harborview Drive Condominium v. Clark*, 119 A.3d 87, 94–95 (Md. Ct. Spec. App. 2015). However, these parties have litigated various issues related to Unit PH4A for nearly a decade. The Maryland Court of Special Appeals characterized their history as a "multiplex of administrative and trial court actions and appeals." *Id.* at 93. The Bankruptcy Court also summarized proceedings from four separate state court actions between these parties. *See* ECF 5-43 at 4–6.

3

novo. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992). A bankruptcy court's calculation of damages is a finding of fact, and therefore is reviewable only for clear error, but to the extent those calculations were influenced by legal error, review is *de novo*. *See Marinucci v. SG Homes Assocs.*, 472 B.R. 299, 311–12 (D. Md. 2012) (quoting *Universal Furniture Int'l, Inc. v. Collezione Europe USA*, 618 F.3d 417, 427 (4th Cir. 2010)).

**B. Loss of Use Damages after February 23, 2012**

The Bankruptcy Court determined that Appellees identified leaks and damage to Unit PH4A that occurred after February 23, 2012. ECF 6-35 at 12. On appeal, Appellant contends that "[n]o evidence was presented by Creditors to show what, if any, damage to the Unit existed as of February 23, 2012." ECF 17 at 19. However, the record provides ample support for the Bankruptcy Court's conclusion that damage occurred after that date.

At trial, both Appellant and Appellees presented evidence indicating that damage to the unit continued after February 23, 2012. First, several witnesses testified explicitly about persisting leaks. Mr. Guedelhoefer — Appellees' structural engineer — testified that leaks continued, and worsened, after February 23, 2012. ECF 6-35 at 7 ("Mr. Guedelhoefer provided extensive testimony concerning the leaks that existed during his various visits since 2013, including leaks that remained as of the date of the trial."). Furthermore, Dr. Clark and Mr. Coleman — Appellant's own expert witness — each testified about leakage that continued, even as of the trial in February, 2018. *Id.* at 8, *id.* at 7 n.9 ("The Debtor's expert witness, Mr. Coleman, generally agreed with Mr. Guedelhoefer's description of leaks existing as of the date of the trial."). In issuing its damages ruling, the Bankruptcy Court assessed the credibility of these individuals. *Id.* at 12 ("The Court finds the testimony of Dr. Clark, Mr. Guedelhoefer, and [another witness] concerning the increase

4

in water leaks and related damages from 2012-2017, which was not directly disputed by the Debtor's evidence, persuasive.").

In addition to considering the witness testimony, the Court relied on other evidence presented by Appellant. Specifically, Appellant provided a letter (dated February 23, 2012) stating that repairs to leaks in Unit PH4A were completed during the first two weeks of February, 2012. *Id.* (explaining that the letter stated Appellant was "satisfied" that the unit's roof had been repaired). The Court concluded that, since major repairs were completed in early February, any leaks identified during the trial must have related to conduct occurring after February 23, 2012. *See id.* Accordingly, "[b]ased on a review of all the testimony and evidence admitted during trial, the Court [found] that the Creditors established conditions within Unit PH4A that relate to the Debtor's conduct and breach of contract after February 23, 2012." *Id.*

The Bankruptcy Court fully acknowledged that the Creditors' conduct, *e.g.*, leaving wet and contaminated materials in the unit, also contributed to the overall damage. ECF 6-35 at 22–23. Thus, Judge Harner made significant reductions to the amounts of Appellees' damages claims. *Id.* at 32 ("[A]ny damages proximately caused by the Debtor's breach are subject to adjustment based on the Creditors' failure to mitigate damages"). To reach its conclusion, the Court analyzed evidence, and made credibility determinations about several witnesses. Credibility assessments merit significant deference when the bankruptcy court has presided over a trial. *See In re Dornier Aviation*, 453 F.3d 225, 235 (4th Cir. 2006) ("Deference to the bankruptcy court's findings is particularly appropriate when, as here, the bankruptcy court presided over a bench trial in which witnesses testified and the court made credibility determinations."). Appellant has not met its burden to show that any of the Bankruptcy Court's factual findings are clearly erroneous. *See United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) ("A court reviewing for clear error . . .

must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."). Indeed, Appellant does not challenge any of the Bankruptcy Court's specific factual findings concerning Mr. Guedelhoefer, Mr. Coleman, or the letter dated February 23, 2012. *See* ECF 17. In other words, Judge Harner found that, while continuing leaks did not cause all of the damage after February 23, 2012, they did cause some. Given these factual findings, the Bankruptcy Court properly concluded that Appellant had breached its contractual obligations to Appellees after February 23, 2012, and thus, awarded an appropriate portion of the damages that Appellees had sought.

## C. Adjustment to Loss of Use Damages Award

The Bankruptcy Court awarded $432,000 to Appellees for 72 months in which they "lost the use" of Unit PH4A.[4] ECF 6-35 at 27. Appellant contends that Appellees denied access to the unit, thereby delaying or preventing Appellant from making the necessary repairs. *See* ECF 17 at 21–25. Therefore, any damages for loss of use were caused in whole, or in part, by Appellees' conduct. *Id.* The Bankruptcy Court erred, Appellant argues, by failing to reduce or deny the Creditors' damages claim accordingly.

However, the Bankruptcy Court did adjust the overall award based on Appellees' responsibility for the damage in the Unit. The Court concluded that Appellees were partially responsible because they (1) failed to mitigate damages and (2) restricted access to the unit for repairs. Considering mitigation, the Court found that "[t]he Debtor presented sufficient evidence to demonstrate that the Creditors' inaction contributed to the current state of the unit." ECF 6-35 at 24. And, with respect to access, the Court explained that "[t]he creditors' decision to exercise

---

[4] *See supra* n.2.

6

such control over access to, and work done within, the unit contributed to the delays in evaluating, testing, and repairing both the common elements and Unit PH4A." *Id.* at 25.

Although the Bankruptcy Court factored this failure to mitigate and control of access into the *overall* damages award, it did not reduce the loss of use portion specifically. *Id.* at 31 n.42 ("[T]he Court did not reduce the Creditors' requested loss of use damages in any respect. The Court finds that treatment appropriate given the reductions to other aspects of the Creditors' requested damages based on causation and mitigation."). Appellant has not met its burden to show that the Bankruptcy Court erred in adjusting the overall award in this manner.

Appellant cites no authority indicating that the Bankruptcy Court had to make a separate and distinct adjustment to the loss of use portion of the damages award. In *Superior Construction Co. v. Elmo*, 102 A.2d 739 (Md. 1954), the appellants alleged that a construction company's operations caused damage to their property. After proceedings in the Baltimore City Circuit Court, the Chancellor ruled in favor of the appellants, and awarded damages on their claims. *Id.* at 740. Critically, the Chancellor "broke down his award into three distinct elements," namely (1) the cost of restoration, (2) compensatory/punitive damages, and (3) loss of use of the property. *Id.* at 742. Relevant here, the Maryland Court of Appeals upheld the lower court's decision to award loss of use damages. In reviewing the history of loss of use damages in Maryland, the court explained that "[i]t has been held by this Court that when personal property has been damaged, recovery is not limited to the cost of repair but may include the value of the use of the property during the time that it would take to repair it." *Id.* at 743. Moreover, the court "perceive[d] no reason for a different rule when the injury [was] to real property." *Id.* at 743–44.

More recently, the Court of Special Appeals addressed loss of use damages in *Yaffe v. Scarlett Place Residential Condominium, Inc.*, 45 A.3d 844 (Md. Ct. Spec. App. 2012). In that

7

case, Yaffe sought compensation for damages stemming from water leaks and moisture infiltration in several of his condominium units. *Id.* at 847. The court concluded that loss of use damages can be measured by means other than solely the reasonable rental value of a comparable property. *Id.* at 858. Even so, the court held that the lower court did not err in determining that Yaffe had not actually lost the use of the relevant units. *Id.*

Neither *Elmo* nor *Yaffe* undermines the Bankruptcy Court's methodology for calculating damages here. To the extent that either case mandates a "separate and distinct," ECF 17 at 25, calculation for loss of use damages, the Bankruptcy Court did precisely that. The Court accepted the testimony of an expert witness, Mr. Reese, who explained that the monthly rent for Unit PH4A was $6,000. ECF 6-35 at 28 ("[T]he Court found Mr. Reese knowledgeable and credible, and the Debtor offered no expert testimony to counter his opinion."). Appellees' loss of the unit, for a 72-month period, led to a $432,000 award. The Court, moreover, separately analyzed consequential damages and repair damages to arrive at its overall damages award. *See Yaffe*, 45 A.3d at 853–58 (analyzing loss of use damages separately from other claims). Appellant cites no case suggesting that the Bankruptcy Court had to incorporate the reduction — for failure to mitigate and for restricting access to the unit — into the loss of use damages, as opposed to the remainder of Appellees' claimed damages. In fact, courts have explained that flexibility is required when making damage calculations. *See, e.g.*, *Yaffe*, 45 A.3d at 450 ("[T]he determination of damages for 'loss of use,' for both temporary and permanent damage to property, must be flexible and based on the factual circumstances of each case."). In this case, the Bankruptcy Court conducted a thorough and reasoned analysis, and its methodology for calculating the loss of use damages and overall damage award finds ample support in case law, and did not constitute clear error.

**III.	Conclusion**

For the reasons explained above, the Bankruptcy Court's decision is affirmed.  A separate Order follows.


Dated: October 2, 2019	             /s/
	Stephanie A. Gallagher
	United States District Judge